UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LACIE JOY ZAVALA,<br><br>                    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                    Defendant. | NO: 1:16-CV-3152-TOR<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY<br>JUDGMENT |

BEFORE THE COURT are the parties' cross-motions for summary judgment (ECF Nos. 18 and 20). This matter was submitted for consideration without oral argument. The Court has reviewed the administrative record and the parties' completed briefing and is fully informed. For the reasons discussed below, the Court **GRANTS** Defendant's motion and **DENIES** Plaintiff's motion.

JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under §405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for the Commissioner's. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted);

*Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008) (ALJ's error in reaching conclusion is immaterial if the ALJ provided other legally sufficient reasons supporting that conclusion). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

### FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i),

416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis

proceeds to step two.  At this step, the Commissioner considers the severity of the

claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the

claimant suffers from "any impairment or combination of impairments which

significantly limits [his or her] physical or mental ability to do basic work

activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c),

416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to

several impairments recognized by the Commissioner to be so severe as to

preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§

404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more

severe than one of the enumerated impairments, the Commissioner must find the

claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity

of the enumerated impairments, the Commissioner must pause to assess the

claimant's "residual functional capacity."  Residual functional capacity ("RFC"),

defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff filed applications for disability insurance benefits and supplemental security income disability benefits on September 13, 2012, alleging a disability onset date of November 15, 2009. Tr. 18. These applications were denied initially and upon reconsideration, and Plaintiff requested a hearing. Tr. 18. A hearing was held before an Administrative Law Judge on December 14, 2011. Tr. 18. The ALJ rendered a decision denying Plaintiff benefits on January 11, 2012. Tr. 18-36.

The ALJ found that Plaintiff meets the insured status requirements of Title II of the Social Security Act through June 30, 2017. Tr. 20. At step one, the ALJ found that Plaintiff engaged in substantial gainful activity during December 2011 through May 2012, but not for the remaining period. Tr. 20. At step two, the ALJ found that Plaintiff had the following severe impairments:

cervical and lumbar spine degenerative disc disease, slight thoracic spine dextroscoliosis, obstructive sleep apnea, sleep related disorder (daytime somnolence, nightmare disorder, sleep paralysis, hypersomnia due to

medications), fibromyalgia, bipolar disorder, substance use disorder, obesity, varicose veins, and asthma.

Tr. 21. At step three, the ALJ found that Plaintiff's severe impairments did not meet or medically equal a listed impairment. Tr. 20. The ALJ then determined that Plaintiff had the residual functional capacity to:

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally balance, stoop, kneel and crouch. The claimant should not crawl or climb ladders, ropes, scaffolds, ramps or stairs. She should avoid concentrated exposure to vibration, hazards, heights, fumes, odors, dusts, gases, and poor ventilation. The claimant can perform simple, routine tasks and follow short, simple instructions. She can do work that needs little or no judgment and can perform simple duties that can be learned on the job in a short period. She has average ability to perform sustained work activities (i.e., can maintain attention, concentration, persistence and pace) in an ordinary work setting on a regular and continuing basis (i.e., eight hours a day, five days a week, or an equivalent work schedule) within customary tolerances of employers rules regarding sick leave and absence. She requires a work environment with minimal supervisor contact (Minimal contact does not preclude all contact. Rather, it means the contact does not occur regularly. Minimal contact also does not preclude simple and superficial exchanges and it does not preclude being in proximity to the supervisor). The claimant can work in proximity to coworkers, but not in a cooperative or team effort. She requires a work environment that requires no more than minimal interactions with coworkers. The claimant requires a work environment that is predictable and with few work setting changes (i.e., a few routine and uninvolved tasks according to set procedures, sequence or pace with little opportunity for diversion or interruption, in other words, low stress). The claimant requires a work environment without public contact.

Tr. 23. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. Tr. 34. At step five, the ALJ found that Plaintiff could perform the

requirements of occupations such as assembler production, cleaner housekeeping, and packing line working, and that such occupations existed in significant numbers in the national economy. Tr. 34-35. The ALJ concluded that Plaintiff was not disabled under the Social Security Act and denied her claims on that basis. Tr. 36.

The Appeals Council denied Plaintiff's request for review on June 27, 2016, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. Tr. 1-6; 20 C.F.R. §§ 404.981, 416.1484, and 422.210.

ISSUES

Plaintiff raises three issues for review:

1. Whether the ALJ failed to properly evaluate the medical opinion evidence.

2. Whether the ALJ erred in failing to obtain the opinion of a medical expert; and

3. Whether the ALJ properly discredited Plaintiff's symptom testimony.

ECF No. 18 at 2.

DISCUSSION

A. **Medical Expert Opinions**

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant

[but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, the opinion of a treating physician carries more weight than the opinion of an examining physician, and the opinion of an examining physician carries more weight than the opinion of a reviewing physician. *Id.* In addition, the Commissioner's regulations give more weight to opinions supported by reasoned explanations than to opinions that are not, and to the opinions of specialists on matters relating to their area of expertise over the opinions of non-specialists. *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995)). Regardless of the source, an ALJ need not accept a physician's opinion that is "brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (quotation and citation omitted).

"If there is 'substantial evidence' in the record contradicting the opinion of the treating physician, the opinion of the treating physician is no longer entitled to 'controlling weight.'" *Orn*, 495 F.3d at 632 (quoting 20 C.F.R. § 404.1527(d)(2)). The phrase "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison,* 759 F.3d at 1012) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)).

1. Dr. Abacan

Gloria Abacan, M.D., a treating physician, examined Zavala over a five month period. Dr. Abacan opined that mental and chronic medical conditions would prevent Zavala from maintaining a job for at least a year. Tr. 1005-06  Dr. Abacan submitted a handwritten medical report—apparently drafted by Plaintiff's attorney—dated May 14, 2014 opining:

- Working on a regular and continuous basis would cause Zavala's condition to deteriorate, explaining that Zavala cannot even drive;

- Zavala would miss some work due to medical impairments if attempting to work a 40-hour per week schedule, explaining that Zavala needs to stay in therapy for the alcohol and drug problems for at least a year, without mentioning how many days of work Zavala would miss; and

- Zavala would need to lie down during the day, explaining her medication makes her sleepy and that she needs to adjust C-PAP, without mentioning how long she would need to lie down.

Tr. 1005-06. Other than stating Zavala has chronic lower back and diffuse pain, has attended rehab sessions, has varicose veins, and gets sleepy all the time, the opinion does not describe Plaintiff's signs or clinical findings, but rather lists the names of her other doctors. Tr. 1005. Dr. Abacan did not respond to the question regarding whether Zavala has physical or mental conditions that are likely to cause pain; she also stated Zavala's prognosis is fair. Tr. 1005-06.

The ALJ properly discredited Dr. Abacan's opinion, as it was conclusory, brief, and unsupported by the record as a whole. The ALJ noted that the opinion was not a function-by-function assessment, failed to explain why Zavala could not maintain a job, did not specify how long Zavala needed to lie down, and the explanations that were provided were inadequate. Tr. 31-32. The ALJ specifically noted that Zavala had completed substance abuse treatment and that Zavala's inability to drive was not related to work like activities.[1] Tr. 31-32 (citing Tr. 937).

---

[1]     Notably, Dr. Abacan deferred to Dr. Ramzan's opinion, who did not form an opinion with respect to Zavala's capacity to work, but rather merely stated that Plaintiff is not safe to drive on the road due to daytime sleepiness and fatigue. Tr.

Plaintiff argues that, even if conclusory and lacking in explanation, the

opinion is entitled to more weight because, "consistent with Dr. Abacan's treating

opinions, treatment records show that Zavala has significant low back and diffuse

pain due to degenerative disc disease and fibromyalgia" and suffers from daytime

somnolence.[2]  ECF No. 18 at 8 (citing Tr. 364-65, 391-92, 658-61, 667-70, 702-04,

918-20, 970-72, 978-80, 983, 1000-04, 1108-10, 1079-81, 1083-85, 1091).  While

it is true the record contains numerous complaints of pain of varying degrees, the

complaints of pain varied and are based on Plaintiff's subjective complaints, which

the ALJ found not entirely credible.  Moreover, the records Plaintiff cites in

support demonstrate Zavala was not limited in mobility; and the record otherwise

demonstrates Zavala was not limited in her ability to take care of herself, her child,

or her ailing grandfather.  Of special import is the fact that neither the opinion of

Dr. Abacan nor Plaintiff's motion specifically argues the underlying pain limits

Zavala's ability to work beyond that assigned in the RFC.  *Maldonado v. Morales*,

556 F.3d 1037, 1048, n. 4 (9th Cir. 2009) (arguments made in passing are waived).

Moreover, the ALJ proposed an RFC that takes Plaintiff's reported daytime

925 (03/05/2014).  Moreover, there is no indication Zavala had trouble making it to

her numerous medical appointments or her substance abuse treatments.  Tr. 1006.

[2]     See n. 1 and discussion regarding Dr. Ramzan below.

somnolence into account by limiting Zavala to light work and limiting her from working in situations where being tired could be dangerous.

Plaintiff also argues that the ALJ erred in finding Dr. Abacan's opinion that Zavala's impairments preclude work is not entitled to weight because it is an issue reserved to the commissioner. ECF No. 18 at 9. The ALJ did not merely dismiss Dr. Abacan's opinion because it reached an ultimate decision; rather, the ALJ fully considered the opinion and its conclusion, and found that the underlying explanation was not sufficient to support the ultimate conclusion. Tr. 31-32.

Plaintiff finally contends that the ALJ erred in failing to make every reasonable effort to recontact the source for clarification. ECF No. 18 at 10. "An ALJ is required to recontact a doctor only if the doctor's report is ambiguous or insufficient for the ALJ to make a disability determination." *Bayliss*, 427 F.3d at 1217. The opinion was not ambiguous as to its explanation of the result and the ALJ found the evidence adequate to make a determination regarding Zavala's disability.

## 2. Dr. Ramzan

Uzma Ramzan, M.D. treated Zavala's sleep apnea. Tr. 925. Dr. Ramzan reported that Zavala had daytime sleepiness and fatigue and recommended that she receive assistance in getting transportation to and from her home as she was not safe to drive. Tr. 925. The ALJ accorded some weight to Dr. Ramzan's opinion,

reasoning that the vast majority of medical records do not describe the claimant as appearing tired, sleepy or sedated. Tr. 31. The ALJ concluded that restricting the claimant from concentrated exposure to hazards and heights and limiting her to light work and simple, routine tasks and short, simple instructions adequately accommodates the daytime sleepiness and fatigue. Tr. 31.

Plaintiff argues that her daytime somnolence is well-supported by the medical record. ECF No. 18 at 11 (citing Tr. 729, 964). Notably, the record includes very few objective observations of fatigue and Zavala admitted her drug of choice included opiates, which cause drowsiness, and that she was not sober during many of her appointments. Tr. 778. Irrespective, the ALJ properly noted that Plaintiff's sleep apnea is adequately controlled by her use of the C-PAP; and the reported limitations are otherwise adequately addressed in the RFC. Critically, Dr. Ramzan's opinion did not specifically detail the limitations other than for driving. *See Frost v. Barnhart*, 314 F.3d 359, 361 (9th Cir. 2002) (there is no reason to assume inability to drive would interfere with ability to do simple work that the ALJ suggested). Accordingly, the ALJ's conclusion as to Plaintiff's RFC is not incompatible with Dr. Ramzan's opinion; and the ALJ reasonably concluded that the record undermines Plaintiff's claims, which is a clear and convincing reason for discounting the opinion.

//

### 3. McClure, ARNP

Heather McClure, ARNP,[3] provided medication management services for Zavala's mental health impairments. Nurse McClure opined, without explanation, that Zavala's symptoms limit her ability to seek work at this time." Tr. 923. The ALJ assigned no weight to Nurse McClure's opinion since she did not explain how the symptoms limited the claimant's ability to seek work or the extent to which the claimant was limited. Tr. 32. Plaintiff argues that Nurse McClure did indicate the extent to which Zavala's bipolar disorder is limiting in that she explained that it prevents Zavala from seeking work or working. ECF No. 18 at 12. This response misses the point: there was no explanation apart from the bare conclusion; it also exaggerates the opined limitations, as Nurse McClure did not say Zavala's limitations *prevented* her from working.

Plaintiff also argues that the ALJ erred in dismissing the opinion without evaluating whether that opinion is consistent with the medical record. ECF No. 18 at 12. Defendant rightly notes that Nurse McClure was neither a psychologist nor a physician, making her an "other source," which an ALJ may discredit by offering a germane reason for rejecting the opinion. ECF No. 20 at 16; *see Molina v.*

---

[3] An advanced registered nurse practitioner (ARNP) is a registered nurse who completes a graduate-level education program.

*Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Failing to provide supporting

reasoning or clinical findings is a germane reason. *Molina*, 674 F.3d at 1111–12

(listing "several germane reasons" including failure to explain the bases of the

conclusion).[4] The ALJ did not err.

### 4. Dr. Cooper

CeCilia Cooper, Ph.D., performed a psychological consultative examination

of Zavala in December 2012. Tr. 502-03. The ALJ accorded Dr. Cooper's opinion

little to no weight, reasoning that it is not supported by the claimant's cognitive

examination, activities, or by the longitudinal medical record, and that the

limitations were largely based on the claimant's less than fully credible self-

reports. Tr. 32. Plaintiff concedes that an opinion may be discounted if based to a

large extent on an applicant's self-reports where the ALJ properly finds the

applicant to be not credible. ECF No. 18 at 14.

Defendant notes that the ALJ adopted many of the limitations reflected in

the opinion of Dr. Cooper in that the ALJ concluded Zavala could perform simple,

routine tasks and follow short, simple instructions, needed minimal interactions

with coworkers or supervisors, needed a low-stress job, and needed a job with

---

[4] Notably, when evaluating an "other source opinion, an ALJ must consider

how well the source explains the opinion." SSR 06-3p (2006 WL 2329939).

predictability and few workplace changes.  ECF No. 20 at 14 (citing Tr. 23).  As

Defendant correctly notes, the only limitations the ALJ did not adopt included the

recommendation that Zavala (1) needed close supervision to complete tasks she did

not like, (2) might have problems maintaining concentration for extended periods,

and (3) would have trouble working in quiet environments.

As the ALJ reasonably found, the first two limitations the ALJ did not adopt

were wholly supported by Zavala's self-reports and are inconsistent with Zavala's

history of education—which included a doctorate in pharmacology obtained in

May 2007—and employment.[5]  As the ALJ noted, Zavala was able to work as a

bus driver, substitute teacher, and waitress, and was able to take care of her

children and ailing grandfather.[6]  Tr. 32.  The ALJ specifically noted that Dr.

---

[5]     Dr. Cooper opined that Zavala's ability to maintain attention and

concentration is somewhat impaired based on Zavala's completion of several tasks,

but the responses do not support the conclusion, as there is no mention that she had

difficulty concentrating, but rather stated she was cooperative.  Tr. 500-01.

[6]     Plaintiff argues that working as a substitute teacher does not necessarily

conflict with Dr. Cooper's conclusions that she would not be capable of

appropriately performing this work, ECF No. 18 at 17.  Even if not necessarily

inconsistent, it is reasonable to interpret it as such.  Zavala otherwise reported to

Cooper did not describe Zavala as giving up on tasks during the evaluation.  Tr. 32.

As to the third limitation, the ALJ noted that Zavala testified that noise rather than

quiet bothers her.  Tr. 32.  These inconsistencies provide clear and convincing

reasons for discounting the proffered opinion.

   5.  Dr. Drenguis

       William Drenguis, M.D., performed a physical consultative examination of

Zavala in December of 2012.  Tr. 486-93.  Dr. Drenguis reviewed MRI results

from 2009 and X-ray results taken for the exam, and performed an examination of

Zavala.   The ALJ assigned some weight to Dr. Drenguis' opinion that Zavala

could lift and carry 20 pounds occasionally and 10 pounds frequently, but assigned

little weight to the opinion that Zavala could only stand and/or walk for four hours

and sit for five hours in an eight-hour day.  Tr. 30.

       The ALJ noted that this opinion was attributed to Zavala's lumbar

degenerative disc disease but reasoned that this conclusion was insufficient

because the imaging obtained that day showed only mild degenerative disc

---

Dr. Cooper that she had lost her job at Rite Aid because she did not get along with

the customers, Tr. 499, but she also said she was let go because of cut backs at

Wal-Mart, where she worked for almost two years.  Tr. 500.

disease,[7] which would not reasonably be expected to cause the degree of limitation he opined.[8]  Tr. 30.  Moreover, the ALJ noted that Dr. Drenguis observed that Zavala's station was unstable, her gait was slow, and she could not tandem walk secondary to ataxia,[9] but other records demonstrated she had normal gait and

---

[7]     The ALJ's decision to rely on the most recent report is not unreasonable given the intervening injection of steroids to combat the issue.  Tr. 302 (MRI/CT scan of back on 12/2008), Tr. 149, 389 (facet joint injection dated 04/02/2009), 414 (recognizing pain is better controlled after sacroiliac joint injection and facet joint injection).

[8]     Plaintiff complains that the ALJ is playing doctor by stating mild disc degenerative disease would not result in the alleged limitation.  Notably, courts have found mild degenerative disc disease may cause persistent, disabling pain, but the ALJ gave alternative reasons that support dismissing the opinion—namely overall inconsistency with the record.  *Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008) (an ALJ's error in reaching his conclusion is immaterial if he provided other legally sufficient reasons supporting that conclusion).

[9]     Notably, Plaintiff reported to Dr. Drenguis that she can stand for about 10 minutes or sit for about 10 minutes before she must change positions; she also stated that she does not smoke or drink alcohol.  Tr. 490.  The record belies this

station.  Tr. 30-31.  This inconsistency is a clear and convincing reason for

discounting Dr. Drenguis' opinion.  The ALJ's conclusion is especially reasonable

in light of the adverse credibility determination, which suggests Zavala may have

been exaggerating her limitations during this visit given the vast amount of

conflicting evidence in the record.

    6.  Dr. Thuline

State agency medical consultant Dale Thuline, M.D. reviewed the medical

record on March 18, 2013 and opined that the claimant should alternate sit/stand

after one hour due to back pain.  Tr. 149.  The submitted medical form requests an

explanation for exertional limitations and how and why the evidence supports the

conclusion, and requests that the examiner cite specific facts upon which the

conclusion is based.  Tr. 149.  Dr. Thuline only noted that Zavala had mild lumbar

DDD with a history of steroid injections without any further explanation.  Tr. 149.

The ALJ assigned significant weight to the opinion of Dr. Thuline with the

exception of Dr. Thuline's opinion that Zavala should alternate sit/stand positions

_____

report and Dr. Drenguis's functional assessment statement demonstrates he did not

put significant weight in Plaintiff's reported limitation.  Moreover, Dr. Drenguis

notes that her symptoms are exacerbated by her obesity, Tr. 492, but she later lost

weight and was exercising.

after one hour due to back pain.  Tr. 33.  As with the ALJ's assessment of Dr.

Drenguis, the ALJ noted that the most recent imaging of the claimant's back was

described to show only mild degenerative disc disease, slight lumbar levoscoliosis,

and slight thoracic dextroscoliosis.[10]  Tr. 33 (citing Tr. 488).  The ALJ also noted

that, while the claimant had fibromyalgia, the voluminous medical record contains

very few observations of the claimant changing position to relieve discomfort. Tr.

33.

The ALJ reasonably concluded that the record contradicted Dr. Thuline's

opinion that Zavala would need to alternate sit/stand positions after one hour given

very few records mentioned Zavala was uncomfortable while sitting and those

records only mentioned she had to shift her weight, which is not the same as

needing to shift stand/sit positions.  Notably, as Defendant points out, Dr. Cooper

observed that Zavala sat for nearly 90 minutes without needing to rise.  ECF No.

20 at 18 (citing Tr. 502).  Moreover, the conclusion was supported with very little

explanation and without any specific evidence or facts noted other than mild

lumbar disk degenerative disease. The ALJ's finding that the conclusion was not

supported by the record is reasonable and this inconsistency is a clear and

convincing reason for discounting the opinion.

_____

[10]      See n. 8.

B. **Additional Medical Opinion**

Plaintiff argues that the ALJ made medical determinations beyond his expertise and that the ALJ should have called upon a medical expert, rather than himself making medical conclusions. ECF No. 18 at 20. Specifically, Plaintiff argues the ALJ improperly determined that Zavala's psychological impairments were limited to bipolar disorder and reasons that this led to an improper credibility determination. This argument is without merit, as the ALJ took into account all complaints regardless of the medical label. Further, the credibility determination was not contingent on this finding.

Plaintiff also argues that the ALJ improperly evaluated imaging results, but does not explain how or why this would change the outcome. Even if this argument were not waived due to this cursory complaint, the argument does not hold weight. The ALJ considered the imaging and Zavala's reported activities and concluded, in tandem, that Zavala was not as limited as claimed. Zavala's activities have implications on how limiting the underlying condition is: if activities show an ability then x-ray or MRI imaging cannot contradict that ability, regardless of the medical expertise needed to fully understand the underlying condition. Notably, the ALJ must have some leeway in considering the medical evidence and other courts have found that the ALJ did not err in finding mild

degenerative spinal conditions do not necessarily produce disabling pain. *See*

*Hughes v. Comm'r of Soc. Sec. Admin.*, 486 F. App'x 11, 16 (11th Cir. 2012).

Plaintiff also argues that the ALJ was compelled to obtain medical expert

testimony regarding the severity and limiting effects of Zavala's multiple

impairments. However, the record is replete with activities and responsibilities

contradicting the claimed severity, so expert testimony on this point was not

required.

C. **Adverse Credibility Determination**

In social security proceedings, a claimant must prove the existence of

physical or mental impairment with "medical evidence consisting of signs,

symptoms, and laboratory findings." 20 C.F.R. §§ 416.908; 416.927. A

claimant's statements about his or her symptoms alone will not suffice. 20 C.F.R.

§§ 416.908; 416.927. Once an impairment has been proven to exist, the claimant

need not offer further medical evidence to substantiate the alleged severity of his or

her symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc).

As long as the impairment "could reasonably be expected to produce [the]

symptoms," the claimant may offer a subjective evaluation as to the severity of the

impairment. *Id.* This rule recognizes that the severity of a claimant's symptoms

"cannot be objectively verified or measured." *Id.* at 347 (quotation and citation

omitted).

If an ALJ finds the claimant's subjective assessment unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). In making this determination, the ALJ may consider, *inter alia*: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Id.* If there is no evidence of malingering, the ALJ's reasons for discrediting the claimant's testimony must be "specific, clear and convincing." *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (quotation and citation omitted). The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "Inconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination." *Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014) (citation omitted).

//

//

1    Here, the ALJ detailed the claimant's testimony and medical record and

2    reasonably found that many of her daily living activities, other conduct, and the

3    medical record conflicted with the claimed severity. *See* Tr. 26-30. As the ALJ

4    reasonably found, the objective medical record contained little details supporting

5    many of the claimant's reported limitations and her daily activities seriously

6    conflicted with the claimed severity. As the ALJ noted, despite Zavala's claimed

7    limitations, she was able to take care of her ailing father; was able to hold

8    employment for a significant amount of time; reported improvements in her

9    symptoms due to physical therapy, exercise and weight loss; the voluminous

10   medical record contained very few observation of the claimant changing positions

11   to relieve discomfort; and the record was otherwise replete with observations

12   stating the claimant was cooperative, alert, pleasant, calm and able to smile, among

13   other things. *See* Tr. 26-30. The ALJ's decision closely tracked Zavala's claimed

14   limitations and provided sufficiently specific findings to conclude the ALJ did not

15   act arbitrarily. The ALJ did not err.

16                                   CONCLUSION

17       The ALJ did not commit any reversible error in reviewing the medical

18   opinions, not ordering additional review, and in finding Plaintiff not entirely

19   credible. Defendant is entitled to summary judgment.

20   //

**IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 17) is **DENIED**.

2. Defendant's Motion for Summary Judgment (ECF No. 19) is

   **GRANTED**.

The District Court Executive is hereby directed to file this Order, enter

Judgment for Defendant, provide copies to counsel, and **CLOSE** the file.

**DATED** July 10, 2017.



THOMAS O. RICE
Chief United States District Judge